UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA SUAREZ, Individually,<br><br>                        Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO;<br>SHANNON KEENE, Registered<br>Nurse; and DOES 1-10, inclusive,<br><br>                        Defendants. | Case No.:  3:20-cv-00456-WQH-BGS<br><br>**ORDER** |

HAYES, Judge:

    The matter pending before the Court is the Motion to Dismiss and the Motion to Strike filed by Defendants Shannon Keene and County of San Diego.  (ECF No. 4).

## I.  PROCEDURAL BACKGROUND

    On March 10, 2020, Plaintiff Tanya Suarez initiated this action by filing a civil rights Complaint pursuant to 42 U.S.C. § 1983 against Defendants County of San Diego ("County"), Shannon Keene, and DOE deputies.  (ECF No. 1).  Plaintiff alleges that she "is now permanently blind" as a result of "Defendants' callous and indifferent behavior …."  *Id*. at 4.  Plaintiff brings the following four causes of action: (1) violation of the 14th Amendment against Defendants Keene and DOE deputies; (2) violation of the 14th Amendment against Defendant County; (3) negligence against all Defendants; and (4)

intentional infliction of emotional distress ("IIED") against all Defendants. *See id*. at 7-19. Plaintiff seeks compensatory, general, special, punitive and exemplary damages; costs and attorney's fees; and "any further relief that the Court may deem appropriate." *Id*. at 20.

On April 27, 2020, Defendants Keene and County filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and a Motion to Strike the exhibits attached to Plaintiff's Complaint as immaterial and impertinent pursuant to Federal Rule of Civil Procedure 12(f). (ECF No. 4).[1]  On May 18, 2020, Plaintiff filed a Response in opposition. (ECF No. 5). On May 22, 2020, Defendants Keene and County filed a Reply. (ECF No. 7).

## II.  ALLEGATIONS OF THE COMPLAINT

On May 6, 2019, Plaintiff was "arrested for being under the influence of a controlled substance." (ECF No. 1 at 2). "Upon her arrest, [Plaintiff] was screaming and wailing on the floor." *Id*. "During the struggle, [Plaintiff] asked the officers to shoot her." *Id*. "It was evident to the arresting officers that [Plaintiff] was experiencing delusions." *Id*. Plaintiff "was transported to Las Colinas Jail." *Id*.

Plaintiff "informed the intake nurse that she had used [a controlled substance] that night and that she had a 5150 hospitalization the year prior." *Id*. at 3. Plaintiff "also admitted to the nurse that at the same time of her 5150 hospitalization she had thoughts of committing suicide." *Id*.

"During her intake interview, [Plaintiff] was acting bizarrely and responding to internal stimuli." *Id*. "While being fingerprinted, [Plaintiff] … experienced psychotic delusions" and "began to claw out her right eye." *Id*. "Defendant DOE deputies immediately intervened and tackled [Plaintiff] to the ground." *Id*. (emphasis in original).

---

[1] Defendants request the Court to take judicial notice of Exhibit A (ECF No. 4-3) to Defendants' Motion to Dismiss. *See* ECF No. 4-2. The Court has not considered this exhibit in resolving this Order.

2

"Defendant DOE deputies secured [Plaintiff] to a gurney face down." *Id*. (emphasis in original). "Defendant DOE deputies handcuffed [Plaintiff] with her hands behind her back." *Id*. (emphasis in original). "While lying face-down on the gurney, Defendant DOE deputies cut [Plaintiff]'s acrylic nails." *Id*. (emphasis in original). "Defendant DOE deputies left [Plaintiff]'s fingernails worse off than before." *Id*. (emphasis in original).

Plaintiff "suffered from a hematoma on her right pupil." *Id*. Plaintiff "denied visual impairment and was able to track visually." *Id*. Plaintiff told Defendant Keene "that she was bipolar and not currently on medication." *Id*. Plaintiff informed Defendant Keene "that she had been using [a controlled substance] and was experiencing paranoid delusions." *Id*.

"After cutting her nails, Defendant DOE deputies removed [Plaintiff] from the gurney and placed her in a safety chair." *Id*. at 4 (emphasis in original). Defendant DOE deputies "restrained [Plaintiff] to the chair and escorted her to a safety cell." *Id*. "Defendant DOE deputies removed [Plaintiff] from the safety char – removed the handcuffs – and left [Plaintiff] in the cell alone and unrestrained." *Id*. (emphasis in original and omitted).

"[S]econds after being placed in the cell," Plaintiff "began clawing out her right eye again" "using her nails – that were now jagged and sharp …." *Id*. "The complete extraction of [Plaintiff's] right eye took approximately thirty seconds." *Id*. Plaintiff "was screaming as she removed her right eyeball." *Id*. "As [Plaintiff] was gouging out her right eyeball, she noticed a female guard was standing outside the cell door filming [Plaintiff] with her iPhone." *Id*. (emphasis omitted).

Plaintiff "then moved on to the left eyeball." *Id*. "It took [Plaintiff] approximately four minutes to remove her left eye." *Id*. "The female guard stood by and filmed the enucleation of both eyes, during which [Plaintiff] was screaming and flailing around the cell." *Id*. (emphasis omitted).

"It took another five to ten minutes for deputies to enter the cell." *Id*. "Jail staff contacted 911." *Id*. Plaintiff "was rushed to the hospital." *Id*. Plaintiff "is now

permanently blind and has two prosthetic eyes." *Id*. "As the result of Defendants' callous and indifferent behavior, [Plaintiff] is now permanently blind." *Id*.

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted …." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citation omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)) (alteration in original). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations …." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden St. Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

## IV. DISCUSSION

### a. Violation of the 14th Amendment Against Defendant Keene (claim 1)

Defendant Keene contends that the facts alleged in the Complaint are insufficient to support a showing of objective deliberate indifference towards Plaintiff's 14th Amendment rights. Defendant Keene asserts that Plaintiff fails to allege that Defendant Keene made a wrongful and intentional decision regarding Plaintiff's conditions of confinement. Defendant Keene asserts that Plaintiff fails to allege how such a decision increased Plaintiff's risk of harming herself. Defendant Keene asserts that Plaintiff fails to allege how the consequences of Defendant Keene's conduct would have been obvious to a reasonable nurse in her position. Defendant Keene contends that the causal connection between Defendant Keene's alleged actions and Plaintiff's self-inflicted injuries are too speculative and tenuous to warrant liability.

Plaintiff contends that Defendant Keene was deliberately indifferent to Plaintiff's psychiatric needs. Plaintiff asserts that Defendant Keene failed to take Plaintiff's attempts to self-harm seriously. Plaintiff asserts that Defendant Keene intentionally decided not to order an emergency psychiatric evaluation and not to notify the jail's psychiatric unit. Plaintiff asserts that Defendant Keene intentionally decided not to have Plaintiff's condition monitored and not to restrain Plaintiff. Plaintiff contends that the decision to place Plaintiff in a jail cell alone and unrestrained posed risks that were obvious to a reasonable nurse given the circumstances of Plaintiff's psychotic episode. Plaintiff contends that Defendant Keene's intentional decisions increased the risk of Plaintiff's self-harm because Plaintiff would have been unable to harm herself had Defendant Keene taken precautions.

42 U.S.C. § 1983 states that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act

or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. "To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998) (citation omitted). The Fourteenth Amendment provides that no State "shall ... deprive any person of life, liberty, or property, without due process of law …." U.S. Const. amend. XIV § 1. "[T]he substantive component of the Due Process Clause is violated by executive action only when it can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotation marks and citation omitted). The cognizable level of executive abuse of power is that which "shocks the conscience" and "violates the decencies of civilized conduct." *Id*. at 846 (internal quotation marks and citation omitted). Mere negligence or liability grounded in tort does not meet the standard for a substantive due process claim. *See id*. at 848-49.

A plaintiff can satisfy the "shocks the conscience" standard either by showing that a state official acted with "deliberate indifference" or showing that a state official "acted with a purpose to harm …." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (emphasis and citation omitted). The Complaint alleges that Defendant Keene's "actions … were done intentionally and with the intent to violate Plaintiff's right, or was done with a reckless disregard or wanton disregard for [Plaintiff]'s constitutional rights." (ECF No. 1 at 10).

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*. "In the Ninth Circuit, the test for deliberate indifference consists of two parts." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). "First, the plaintiff must show a serious medical need by

demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id*. (internal quotation marks and citation omitted). "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Id*. (citation omitted).

"To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (citing *Estelle*, 429 U.S. at 104). "Such a need exists if failure to treat the injury or condition 'could result in further significant injury' or cause 'the unnecessary and wanton infliction of pain.'" *Id*. (quoting *Jett*, 439 F.3d at 1096). "Indications that a plaintiff has a serious medical need include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. (alteration in original) (internal quotation marks and citation omitted).

The Complaint alleges, in relevant part,

> When [Plaintiff] initially tried to remove the right eyeball while being fingerprinted, deputies intervened by jumping on top of [Plaintiff] and restraining her hands…. As this happened, [Plaintiff] was screaming and making delusional statements. [Plaintiff] even bit a deputy that was trying to restrain her. Defendant DOE deputies put [Plaintiff] on a gurney in order to cut her nails. They then placed [Plaintiff] in a restraint chair and took [Plaintiff] to get medically evaluated. [Plaintiff] continued to act delusional as she was being medically evaluated.

(ECF No. 1 at 7-8) (emphasis in original). The Complaint further alleges, in relevant part,

> As [Plaintiff] was being medically evaluated by Defendant … Keene, Defendant DOE deputies made the decision to house [Plaintiff] in a safety cell. Defendant DOE deputies escorted [Plaintiff] to the safety cell. They removed [Plaintiff] from the restraint chair, removed the handcuffs, and left her alone in the cell.

*Id*. at 8 (emphasis in original and omitted). The Complaint alleges sufficient facts to show "the existence of a serious medical need." *Colwell*, 763 F.3d at 1066 (citing *Estelle*, 429 U.S. at 104).

"Th[e] second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*. (internal quotation marks and citation omitted). "[T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case." *Id*. (alteration in original) (internal quotation marks and citation omitted). "The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id*. (internal quotation marks and citation omitted). "Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard. *Id*. (internal quotation marks and citation omitted).

The Complaint alleges, in relevant part,

> When [Plaintiff] initially tried to remove the right eyeball while being fingerprinted, deputies intervened by jumping on top of [Plaintiff] and restraining her hands…. As this happened, [Plaintiff] was screaming and making delusional statements. [Plaintiff] even bit a deputy that was trying to restrain her. Defendant DOE deputies put [Plaintiff] on a gurney in order to cut her nails. They then placed [Plaintiff] in a restraint chair and took

> [Plaintiff] to get medically evaluated. [Plaintiff] continued to act delusional as she was being medically evaluated.

(ECF No. 1 at 7-8) (emphasis in original). The Complaint further alleges, in relevant part,

> During a moment of lucidity, [Plaintiff] told Defendant … Keene that she was bipolar and not currently on medication. Most importantly, [Plaintiff] informed Defendant … Keene that she had been using [a controlled substance] and was experiencing paranoid delusions.
>
> However, because this incident occurred at 3:45 a.m., a psych provider was not present at the jail. Defendant … Keene is a Registered Nurse and is not trained to perform psychiatric assessments. Defendant … Keene is (or should be) trained to initiate certain psychiatric-related protocols in the context of self-harming incidents. But, Defendant … Keene did not initiate the psych protocol, nor did she initiate the 5150 protocol. Defendant … Keene also failed to notify the PSU, which [is] [sic] the jail's psychiatric unit. Defendant … Keene should have ordered that a medical provider monitor [Plaintiff] until she was able to be evaluated by a psychiatrist. Defendant … Keene simply set up a "medical sick call" for the next day because of the "use of force." Defendant … Keene did not take the necessary and obvious steps of addressing [Plaintiff]'s psychiatric needs. Nor did she take any steps to address the obvious and on-going psychosis.
>
> As [Plaintiff] was being medically evaluated by Defendant … Keene, Defendant DOE deputies made the decision to house [Plaintiff] in a safety cell. Defendant DOE deputies escorted [Plaintiff] to the safety cell. They removed [Plaintiff] from the restraint chair, removed the handcuffs, and left her alone in the cell.
>
> Defendants were objectively indifferent to think [Plaintiff] was not going to inflict more damage to herself once they left her in the cell unrestrained.
>
> At minimum, a reasonable deputy or nurse would have kept [Plaintiff] restrained until she was evaluated by a psychiatrist. A reasonable deputy or nurse would not have left [Plaintiff] in a cell unrestrained without constant monitoring.
>
> In sum, Defendants were on direct notice that [Plaintiff] was under the influence of [a controlled substance] and was actively experiencing paranoid-[controlled-substance]-induced delusions. Defendants were also on direct notice that those delusions caused [Plaintiff] to gruesomely attempt to remove

> her right eyeball. Despite this notice, Defendants left [Plaintiff] in a cell unrestrained, with sharp and jagged nails, and then watched (and recorded) her remove both eyeballs.

*Id*. at 3, 8-9 (emphasis in original and omitted).

In this case, the Complaint alleges that Plaintiff "told Defendant … Keene that she was bipolar and not currently on medication." *Id*. at 3. The Complaint alleges that Plaintiff "informed Defendant … Keene that she had been using [a controlled substance] and was experiencing paranoid delusions." *Id*. The Complaint alleges that "[Plaintiff] continued to act delusional as she was being medically evaluated." *Id*. at 8. The Court concludes that the Complaint alleges sufficient facts to show that Defendant Keene was aware of Plaintiff's mental health problems.

In *Atayde v. Napa State Hosp.*, the court "conclude[d] that [the] plaintiff's § 1983 deliberate indifference claim against defendant [nurse] White [wa]s sufficient under federal pleading standards." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 993 (E.D. Cal. 2017). The "plaintiff allege[d] that defendant White was an [Napa State Hospital] nurse 'responsible for screening patients for admission …,' and was directly involved in [the plaintiff]'s pre-admission evaluation." *Id*. (citation omitted). "[T]he FAC allege[d] that defendant White was aware of [an] October 2014 court order committing [the plaintiff] to [Napa State Hospital], and that she knew of the high degree of risk involved in [the plaintiff] remaining at the county jail." *Id*. (citation omitted). The "[p]laintiff allege[d] that defendant White ultimately failed to heed requests by Merced County officials to finalize the admission, causing a delay in [the plaintiff]'s transfer to [Napa State Hospital] and ultimately resulting in [the plaintiff's] suicide" in county jail. *Id*. (citation omitted). The court concluded that the plaintiff "adequately alleged defendant White did not take reasonable available measures to abate the serious risks faced by [the plaintiff], and that this omission proximately caused [the plaintiff] to suffer harm." *Id*. (citation omitted). In this case, the Complaint does not allege that Defendant Keene was required to act pursuant to a court order or a request from County officials.

The Complaint alleges that Defendant Keene "set up a 'medical sick call' for the next day …." (ECF No. 1 at 8). The Complaint alleges that Plaintiff was "house[d] … in safety cell" "[a]s [she] was being medically evaluated by Defendant … Keene …." *Id*. The Complaint alleges that "Defendant DOE deputies made the decision to house [Plaintiff] in a safety cell[,]" not Defendant Keene. *Id*. (emphasis in original). The Complaint alleges that "Defendant DOE deputies escorted [Plaintiff] to the safety cell." *Id*. (emphasis in original). The Complaint alleges that Defendant DOE deputies "removed [Plaintiff] from the restraint chair, removed the handcuffs, and left [Plaintiff] alone in the [safety] cell." *Id*. (emphasis omitted). The Court finds that Plaintiff fails to allege sufficient facts to show that Defendant Keene's conduct was "objectively unreasonable" to constitute deliberate indifference. *Gordon*, 888 F.3d at 1125; *see e.g.*, *Floyd v. Ada Cty.*, No. 1:17-cv-150-DCN, 2017 WL 6543872, at *6 (D. Idaho Dec. 21, 2017) ("Liberally construed, the Amended Complaint does allege that Nurse Dean was aware of Floyd's mental health problems and that Nurse Dean told Floyd that he had an appointment with a social worker. Floyd never met with a social worker. The Amended Complaint does not allege that Nurse Dean was deliberately indifferent to Floyd's needs in any particular way. For example, Floyd does not allege that Nurse Dean lied about scheduling the appointment. Instead, at most the alleged facts show negligence."). The Court concludes that Plaintiff fails to state a claim pursuant to the 14th Amendment against Defendant Keene. Plaintiff's first claim is dismissed without prejudice.

### b. Violation of the 14th Amendment Against Defendant County of San Diego (claim 2)

Defendant County contends that Plaintiff's derivative municipal liability claim fails because Plaintiff fails to allege an underlying constitutional violation by a Defendant Keene. Plaintiff contends that Defendant County is liable for Defendant Keene's misconduct because Defendant Keene committed a constitutional violation pursuant to Defendant County's long-standing municipal practice or custom. Plaintiff contends that Defendant Keene's conduct was consistent with a municipal practice of responding with apathy to

inmates' threats and attempts to self-harm. Plaintiff contends that Defendant County's municipal custom of indifference was the moving force behind Defendant Keene's conduct and Plaintiff's injuries.

A municipality or governmental entity cannot be found liable under § 1983 on "for an injury inflicted solely by its employees or agents." *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 694 (1978). Liability can be imposed on local governing bodies for injuries inflicted pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690. "The Supreme Court made clear that in addition to an official policy, a municipality may be sued for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the [governmental] body's official decisionmaking channels." *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995) (quoting *Monell*, 436 U.S. at 690-91) (alteration in original) (internal quotation marks and other citation omitted). "[F]our conditions … must be satisfied in order to establish municipal liability for failing to act to preserve constitutional rights: (1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Van Ort v. Est. of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (alteration in original) (internal quotation marks and citations omitted).

The Court has dismissed Plaintiff's 42 U.S.C. § 1983 claim with respect to Defendant Keene. The Court has concluded that Plaintiff was not deprived of a constitutional right by Defendant Keene. Plaintiff cannot establish municipal liability and the Court need not reach the issue of whether the alleged constitutional violation by Defendant Keene was caused by Defendant County's municipal policy or custom. *See id.* at 835; *see e.g.*, *Ervin v. Cty. of San Diego*, No. 14cv1142-WQH-BGS, 2019 WL 4858378, at *12 (S.D. Cal. Oct. 2, 2019) ("The Court has dismissed Plaintiff's 42 U.S.C. § 1983 claims with respect to Defendant County, therefore, Plaintiff cannot show that he was deprived of a constitutional right.

Because the Court concludes that Plaintiff was not deprived of a constitutional right, Plaintiff cannot establish municipal liability and the Court need not reach the issue of whether the alleged constitutional violation was caused by a custom or policy of the County."). The Court concludes that Plaintiff fails to state a claim pursuant to the 14th Amendment against Defendant County. Plaintiff's second claim is dismissed without prejudice.

### c.  State Law Causes of Action (claims 3 and 4)

The federal causes of action for violations of the 14th Amendment (claims 1 and 2) have been dismissed. The remaining causes of action for negligence and intentional infliction of emotional distress (claims 3 and 4) do not arise under federal law. The Complaint contends that jurisdiction is proper in this Court based on federal question jurisdiction over the federal law claims and supplemental jurisdiction over the remaining state law claims. *See* ECF No. 1 at 5.

The federal supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction …." 28 U.S.C. § 1367(c)(3).

Having dismissed the only federal claims in this action, the Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c). *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'"); *see e.g., Anbar v. Deutsche Bank Nat. Tr. Co.*, No. 13cv1318-WQH-RBB, 2013 WL 5937274, at *3 (S.D. Cal. Nov. 4, 2013) ("In this case, the Court has dismissed the sole claim against Defendants which is

capable of conferring federal-question jurisdiction. The Court declines to exercise supplemental jurisdiction over the remaining claims against Defendants pursuant to 28 U.S.C. § 1367(c)."); *Wesley-Willis v. Cajon Valley Union Sch. Dist.*, No. 17cv1662-WQH-WVG, 2018 WL 1010504, at *2 (S.D. Cal. Feb. 22, 2018) ("Having dismissed the only federal claims asserted by Wesley-Willis in this action, the Court declines to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(c).").

## V. CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendants Shannon Keene and County of San Diego (ECF No. 4) is GRANTED. Plaintiff's Complaint is DISMISSED without prejudice. Any motion for leave to file an amended pleading must be filed within 30 days of this Order.

IT IS FURTHER ORDERED that the Motion to Strike filed by Defendants Shannon Keene and County of San Diego (ECF No. 4) is DENIED as moot.

Dated: June 25, 2020

*/s/ William Q. Hayes*
Hon. William Q. Hayes
United States District Court