UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

TANYA SUAREZ, Individually,

Plaintiff,

v.

COUNTY OF SAN DIEGO;
SHANNON KEENE, Registered
Nurse; and DOES 1-10, inclusive,

Defendants.

Case No.:  3:20-cv-00456-WQH-BGS

**ORDER**

HAYES, Judge:

The matter pending before the Court is the Motion to Dismiss and the Motion to Strike filed by Defendants Shannon Keene and County of San Diego.  (ECF No. 15).

**I.   PROCEDURAL BACKGROUND**

On March 10, 2020, Plaintiff Tanya Suarez initiated this action by filing a civil rights Complaint pursuant to 42 U.S.C. § 1983 against Defendants County of San Diego ("County"), Shannon Keene, and DOE deputies.  (ECF No. 1).  On April 27, 2020, Defendants Keene and County filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and a Motion to Strike the exhibits attached to Plaintiff's Complaint as immaterial and impertinent pursuant to Federal Rule of Civil Procedure 12(f).  (ECF No.

4).  On June 25, 2020, the Court issued an Order granting the Motion to Dismiss filed by Defendants Keene and County and denying as moot the Motion to Strike filed by Defendants Keene and County.  (ECF No. 9).  The Court stated that "[a]ny motion for leave to file an amended pleading must be filed within 30 days of this Order."  *Id.* at 14.  On July 24, 2020, Plaintiff filed a Motion for Leave to Amend the Complaint.  (ECF No. 10).  On August 31, 2020, the Court issued an Order granting the Motion for Leave to Amend the Complaint filed by Plaintiff.  (ECF No. 13).

On September 29, 2020, Plaintiff filed an Amended Complaint.  (ECF No. 14).[1] Plaintiff alleges that she "is now permanently blind . . . [a]s a result of Defendants' callous and indifferent behavior . . . ."  *Id.* at 5.  Plaintiff brings the following four causes of action: (1) violation of the Fourteenth Amendment against Defendants Keene, Female DOE Deputy Defendant, and DOE Deputy Defendants 1-10; (2) violation of the Fourteenth Amendment against Defendant County; (3) negligence against all Defendants; and (4) intentional infliction of emotional distress ("IIED") against all Defendants.  *See id.* at 9-28.  Plaintiff seeks compensatory, general, special, punitive and exemplary damages; costs and attorney's fees; and "any further relief that the Court may deem appropriate."  *Id.* at 28.

On October 13, 2020, Defendants Keene and County filed a Motion to Dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and a Motion to Strike the exhibits attached to Plaintiff's Amended Complaint as immaterial and impertinent pursuant to Federal Rule of Civil Procedure 12(f).  (ECF No. 15).  On November 2, 2020, Plaintiff filed a Response in opposition.  (ECF No. 16).  On November 9, 2020, Defendants Keene and County filed a Reply.  (ECF No. 17).

---

[1] Plaintiff requests the Court to take judicial notice of Exhibit 7 (ECF No. 14 at 104-117) to the Amended Complaint.  *See* ECF No. 14 at 23.  The Court has not considered this exhibit in resolving this Order.

## II.   ALLEGATIONS OF THE AMENDED COMPLAINT

On May 6, 2019, Plaintiff was "arrested for being under the influence of a controlled substance." (ECF No. 14 at 2). "Upon her arrest, [Plaintiff] was screaming and wailing on the floor." *Id*. "During the struggle, [Plaintiff] asked the officers to shoot her." *Id*. "It was evident to the arresting officers that [Plaintiff] was experiencing delusions." *Id*. Plaintiff "was transported to Las Colinas Jail." *Id*. Plaintiff "informed the intake nurse that she had used [a controlled substance] that night and that she had a 5150 hospitalization the year prior." *Id*. at 3. Plaintiff "also admitted to the nurse that at the same time of her 5150 hospitalization she had thoughts of committing suicide." *Id*.

"During her intake interview, [Plaintiff] was acting bizarrely and responding to internal stimuli." *Id*. "While being fingerprinted, [Plaintiff] . . . experienced psychotic delusions" and "began to claw out her right eye." *Id*. "DOE Deputy Defendants immediately intervened and tackled [Plaintiff] to the ground." *Id*. "DOE Deputy Defendants secured [Plaintiff] to a gurney face down." *Id*. "Defendant DOE deputies handcuffed [Plaintiff] with her hands behind her back." *Id*. "While lying face-down on the gurney, DOE Deputy Defendants cut [Plaintiff]'s acrylic nails." *Id*. "DOE Deputy Defendants left [Plaintiff]'s fingernails worse off than before." *Id*.

"DOE Deputy Defendants, without first notifying a superior, placed [Plaintiff] in a restraint chair and escorted her to  . . . Defendant . . . Keene . . . for evaluation and assessment." *Id*. "DOE Deputy Defendants informed Defendant Keene of [Plaintiff]'s self-harming behavior." *Id*. Plaintiff "told Defendant Keene that she was bipolar and not currently on medication" and that "she had been using [a controlled substance] and was experiencing paranoid delusions." *Id*. at 3-4. "Defendant Keene also knew that [Plaintiff] was recently hospitalized on a 5150 for suicidal ideations." *Id*. at 4.

"Defendant Keene was the designated 'Gatekeeper' on duty." *Id*. "As the gatekeeper, Defendant Keene was duty-bound to acknowledge [Plaintiff]'s act of attempting to gouge out her eyeball as an act of self-harm." *Id*. "[I]f an inmate is actively engaging in self-harm, the gatekeeper is to place the inmate on the ISP ('Inmate Safety

Plan') program." *Id.* "[I]f an inmate is actively engaging in self-harming behavior the inmate is to be assigned to a safety cell *with restraints*" and "scheduled for a psychiatric evaluation immediately." *Id.*

"Defendant Keene failed to assume the role of gatekeeper and failed to recognize [Plaintiff] as a risk of self-harm." *Id.* "Rather, Defendant Keene performed a medical assessment of [Plaintiff]'s eye." *Id.* "When [Plaintiff] denied visual impairment and was able to track visually, Defendant Keene turned [Plaintiff] over to DOE Deputy Defendants." *Id.* "Defendant Keene did not acknowledge that [Plaintiff] was engaging in self-harming behavior and therefore failed to assess and house [Plaintiff] accordingly." *Id.* (emphasis omitted).

"DOE Deputy Defendants placed [Plaintiff] in a safety cell but first removed the handcuffs." *Id.* at 5 (emphasis omitted). "DOE Deputy Defendants intentionally placed [Plaintiff]—who was actively self-harming and experiencing delusions—in an isolated cell unrestrained." *Id.* (emphasis omitted). "[S]econds after being placed in the cell, using her nails – that were now jagged and sharp – [Plaintiff], still obviously suffering from psychosis, began clawing out her right eye again." *Id.* "The complete extraction of the right eye took approximately thirty seconds." *Id.* Plaintiff "was screaming as she removed her right eyeball." *Id.* "As [Plaintiff] was gouging out her right eyeball, she noticed Female DOE Deputy Defendant was standing outside the cell door filming [Plaintiff] with her iPhone." *Id.* (emphasis omitted). Plaintiff "then moved on to the left eyeball." *Id.* "It took [Plaintiff] approximately four minutes to remove her left eye." *Id.* "Female DOE Deputy Defendant stood by and filmed the enucleation of both eyes, during which [Plaintiff] was SCREAMING and flailing around in the cell." *Id.* (emphasis omitted). "Female DOE Deputy Defendant did not call for help and did not intervene." *Id.* "It took another five to ten minutes for deputies to enter the cell." *Id.* "Jail staff contacted 911." *Id.* Plaintiff "was rushed to the hospital." *Id.* Plaintiff "is now permanently blind and has two prosthetic eyes." *Id.* "As the result of Defendants' callous and indifferent behavior, [Plaintiff] is now permanently blind." *Id.*

Defendant Keene should have:

   a. Ordered [Plaintiff] to be transported to an emergency room to be evaluated by a psychiatrist and administered anti-psychotic medication, such a Haldol;

   b. Called a supervisor;

   c. If she was the supervisor, acknowledged [Plaintiff]'s conduct as self-harming; and

   d. Ordered [Plaintiff] to be placed in safety cell with restraints.

*Id*. at 14. Defendant "[C]ounty continues to be deliberately indifferent by permitting non-mental health providers (such as registered nurses) to perform the 'gatekeeper' function." *Id*. at 23. "RNs are not qualified or equipped to perform [] mental health and suicide risk assessments" and Defendant "[C]ounty does not provide RNs with specialized training regarding suicide assessments." *Id*. Defendant "[C]ounty is liable for [Plaintiff]'s blindness and trauma because it was on notice via a pre-existing – and highly publicized – pattern of similar constitutional violations due to [Defendant] [C]ounty's inadequate suicide and self-harm prevention policies and training programs." *Id*. Defendant County's "inadequate policies and training were the moving force behind [Plaintiff's] preventable . . . injuries; and, therefore required modification." *Id*. at 24.

## III.   MOTION TO DISMISS

### a. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving

party." *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001)).

"[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citation omitted). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

### b. Discussion

#### i. Violation of the Fourteenth Amendment Against Defendant Keene (claim 1)

##### 1. Deliberate Indifference

Defendant Keene contends that the facts alleged in the Amended Complaint are insufficient to support a showing of objective deliberate indifference towards Plaintiff's Fourteenth Amendment rights. Defendant Keene asserts that Plaintiff fails to allege that Plaintiff verbalized her self-harming intentions to Defendant Keene and that Defendant Keene had specific knowledge of Plaintiff's intent to engage in enucleation. Defendant Keene contends that alleged policy violations are not sufficient to demonstrate the violation of a plaintiff's constitutional rights. Defendant Keene contends that allegations of a defendant's conduct falling below the standard of care, including failing to take a plaintiff's medical history or failing to properly diagnose the plaintiff, are insufficient to constitute deliberate indifference.

Plaintiff contends that Defendant Keene is liable because her deliberate indifference to Plaintiff's serious risk of self-harm led to Plaintiff's enucleation and blindness. Plaintiff contends that a reasonable nurse in the same situation would have recognized Plaintiff's behavior as self-harming and identified Plaintiff as a detainee potentially at risk for self-harm. Plaintiff contends that policies required Plaintiff to be housed in a safety cell with restraints. Plaintiff contends that Defendant Keene acted with deliberate indifference by failing to acknowledge Plaintiff's conduct as self-harming, failing to house Plaintiff in a safety cell with restraints, and failing to transport Plaintiff to an emergency room to be evaluated by a psychiatrist and administered anti-psychotic medication.

42 U.S.C. § 1983 states that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. "To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Jensen v. City of Oxnard*, 145 F.3d 1078, 1082 (9th Cir. 1998).

> A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but

3:20-cv-00456-WQH-BGS

also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

*Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)

The Fourteenth Amendment provides that no State "shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV § 1. "[T]he substantive component of the Due Process Clause is violated by executive action only when it can be properly characterized as arbitrary, or conscience shocking, in a constitutional sense." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998). The cognizable level of executive abuse of power is that which "shocks the conscience and violates the decencies of civilized conduct." *Id*. at 846. Mere negligence or liability grounded in tort does not meet the standard for a substantive due process claim. *See id*. at 848-49.

A plaintiff can satisfy the "shocks the conscience" standard either by showing that a state official "acted with *deliberate indifference*" or showing that a state official "acted with a *purpose to harm* . . . ." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). "Medical malpractice does not become a constitutional violation merely because the victim is a [detainee]. In order to state a cognizable claim, a [detainee] must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "In the Ninth Circuit, the test for deliberate indifference consists of two parts." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a [detainee]'s condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Id*. (citation omitted).

"To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). "Such a need exists if failure to treat the injury or condition could result in further significant injury or cause the unnecessary and wanton infliction of pain." *Id*. "Indications that a plaintiff has a serious medical need include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id*. (alteration in original).

In this case, the Amended Complaint alleges that Plaintiff "initially tried to remove the right eyeball while being fingerprinted" and that "DOE Deputy Defendants informed Defendant Keene of [Plaintiff]'s self-harming behavior." (ECF No. 14 at 9). The Amended Complaint alleges that Plaintiff "told Defendant Keene that she was bipolar", "not currently on medication", "had been using meth[,] and was experiencing paranoid delusions." *Id*. The Amended Complaint alleges that Plaintiff "continued to act delusional as [Plaintiff] was being medically evaluated." *Id*. The Amended Complaint alleges that "Defendant Keene also knew that [Plaintiff] was recently hospitalized on a 5150 for suicidal ideations." *Id*. The Court concludes that Plaintiff alleges sufficient facts to plausibly demonstrate "the existence of a serious medical need" and that Defendant Keene was aware of Plaintiff's mental health problems and self-harming behavior. *Colwell*, 763 F.3d at 1066.

"Th[e] second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a [detainee]'s pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. However, plaintiffs "need not prove complete failure to treat . . . ." *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989). Deliberate "[i]ndifference may appear when [jail] officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which [jail] physicians provide medical care." *Jett*, 439 F.3d at 1096. "In deciding whether there has been deliberate indifference to a[] [detainee]'s

serious medical needs, [courts] need not defer to the judgment of [jail] doctors or administrators." *Colwell*, 763 F.3d at 1066. "Yet, an inadvertent [or negligent] failure to provide adequate medical care alone does not state a claim under § 1983" because "the test to be applied . . . must require a pretrial detainee who asserts a due process claim for failure to protect to prove more than negligence but less than subjective intent—something akin to reckless disregard." *Jett*, 439 F.3d at 1096 (alteration in original); *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016).

Pursuant to the second prong, "claims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment must be evaluated under an objective deliberate indifference standard." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018), *cert. denied sub nom. Cty. of Orange, Cal. v. Gordon*, 139 S. Ct. 794 (2019). "[T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Id.* at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case." *Id*. (alteration in original). "The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id*. "Thus, the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id*.

In this case, the Amended Complaint alleges that "Defendant Keene was the Gatekeeper at Las Colinas on May 6, 2019" and that, "[a]s the gatekeeper, Defendant

Keene was responsible for conducting a suicide risk assessment." (ECF No. 14 at 10). The Amended Complaint alleges that Defendant Keene "kn[e]w[ ] that [Plaintiff] was actively engaging in self-harming behavior, experiencing psychotic and commanding delusions, with untreated psychiatric disorders . . . ." *Id.* at 11. The Amended Complaint alleges that "[a]s the gatekeeper, it was Defendant Keene's duty to recognize and acknowledge that [Plaintiff]'s attempt to remove her eyeball was a form of self-harm and that [Plaintiff]— currently experiencing commanding delusions—would continue to injure herself if unrestrained, unmonitored, and untreated." *Id.* at 11-12. The Amended Complaint alleges "[u]pon recognition of [Plaintiff]'s obvious intent to harm herself, it was Defendant Keene responsibility to recommend ISP housing", "to conduct a suicide risk assessment[,] and to flag [Plaintiff] as a suicide/self-harm risk via a pink wristband." *Id.*

The Amended Complaint alleges "that an ISP evaluation was [not] conducted" and "a referral for an ISP evaluation was [not] scheduled." *Id.* at 13. The Amended Complaint alleges that Plaintiff's behavior was "not refer[red] to . . . as self-harming or suicidal" and "Defendant Keene did not flag [Plaintiff] as a self-harm risk and did not communicate to [Defendant] DOE deputies that [Plaintiff] was in need of suicide precautions . . . ." *Id.* The Amended Complaint alleges that "Defendant Keene did not subjectively acknowledge/recognize that [Plaintiff] was a danger to herself and in need of an ISP assessment and safety housing." *Id.*

The Court of Appeals has held that alleged violations of jail policies are insufficient to constitute a violation of constitutional rights. *See e.g.*, *Swearington v. California Dep't of Corr. & Rehab.*, 624 F. App'x 956, 958 (9th Cir. 2015) ("[A]lleged failure to follow prison policy . . . would not constitute a violation of a federal right."). However, taking all allegations as true and construed in the light most favorable to Plaintiff, Plaintiff alleges sufficient facts to infer that (i) Defendant Keene "made an intentional decision" not to conduct a suicide risk assessment, not to flag Plaintiff as a self-harm risk, and not to recommend housing in a safety cell with restraints; (ii) those conditions put Plaintiff "at substantial risk of suffering serious harm;" (iii) Defendant Keene "did not take reasonable

available measures to abate that risk, even though a reasonable [nurse] in the circumstances would have appreciated the high degree of risk involved"; and (iv) by not taking such measures, Defendant Keene caused Plaintiff's injuries. *Gordon*, 888 F.3d at 1125. The Court finds that Plaintiff alleges facts plausibly suggestive of a claim that Defendant Keene's deliberate indifference towards Plaintiff's Fourteenth Amendment rights. *See e.g.*, *Deloney v. Cty. of Fresno*, No. 1:17-cv-01336-LJO-EPG, 2019 WL 1875588, at *7 (E.D. Cal. Apr. 26, 2019) (finding that mental health staff member defendants were deliberately indifferent to decedent's serious medical needs because they were aware of or should have been aware of decedent's suicidal ideations and should have done more to address the risk by following up after the housing transfer, sending decedent to a mental health facility, evaluating decedent for medication needs, or providing decedent with psycho-education materials for coping strategies); *Estate of Sandra Vela v. Cty. of Monterey*, No. 16-cv-02375-BLF, 2016 WL 4678300, at *5 (N.D. Cal. Sept. 7, 2016) (finding that California Forensic Medical Group defendants were deliberately indifferent to decedent's serious medical needs, health, and safety because they failed to provide decedent medical and psychiatric treatment; failed to identify decedent's suicide risk; failed to train, supervise, and/or promulgate appropriate policies and procedures to identify suicide risk; and failed to correct their policies, procedures, and practices despite notice of significant and dangerous problems). The Court concludes that Plaintiff alleges a plausible claim for violation of the Fourteenth Amendment against Defendant Keene.

## 2. Qualified Immunity

Defendant Keene contends that she is entitled to qualified immunity because her alleged conduct did not violate clearly established law. Defendant Keene asserts that Plaintiff fails to identify precedent in which a jail nurse is held liable pursuant to the Fourteenth Amendment for failing to prevent a detainee from mutilating herself while experiencing drug-induced hallucinations and delusions. Plaintiff contends that qualified immunity cannot shield Defendant Keene from liability because Defendant Keene violated Plaintiff's clearly established right pursuant to the Fourteenth Amendment. Plaintiff

contends that it was clearly established that leaving Plaintiff alone and unrestrained in a jail cell, instead of ordering psychiatric services and monitoring, would violate Plaintiff's Fourteenth Amendment right.

"Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001). "[A] two-step sequence for resolving government officials' qualified immunity claims . . . is often appropriate . . . ." *Pearson v. Callahan*, 555 U.S. 223, 232, 36 (2009). "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Id*. at 232 (citations omitted). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id*.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alterations in original). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id*. The Supreme Court "ha[s] repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Id*. at 742 (citation omitted). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*.

A "plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Maraziti v. First Interstate Bank of California*, 953 F.2d 520, 523 (9th Cir. 1992). "If this burden is met by plaintiff, the defendant then bears the burden of establishing that his actions were reasonable, even though they might have violated the plaintiff's constitutional rights." *Id*. "Therefore,

regardless of whether the constitutional violation occurred, the officer should prevail if the right asserted by the plaintiff was not clearly established or the officer could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).

In this case, Plaintiff alleges sufficient facts to demonstrate that Defendant Keene failed to address Plaintiff's serious medical needs in violation of her Fourteenth Amendment rights.  Plaintiff's right to be free from violations of this constitutional right was well-established by 2019, the time of the alleged constitutional violation in this case. *See Pearson*, 555 U.S. at 232; *see e.g.*, *Castro,* 833 F.3d at 1067 (finding that "the duty to protect Castro from violence was clearly established at the time of the incident").  The Court concludes that dismissal of Plaintiff's claim for violation of the Fourteenth Amendment against Defendant Keene on qualified immunity grounds is not warranted at this time.

### ii. Violation of the Fourteenth Amendment Against Defendant County (claim 2)

Defendant County contends that Plaintiff's derivative municipal liability claim fails because Plaintiff fails to allege an underlying constitutional violation by Defendant Keene, fails to identify a formal municipal policy that caused Plaintiff's injuries, and fails to identify a well-settled municipal practice that was the moving force behind Plaintiff's injuries.  Plaintiff contends that municipal defendants may be held liable even if no individual officer is held liable for violating a plaintiff's constitutional rights or is dismissed based on qualified immunity.  Plaintiff contends that Defendant County is liable for Defendant Keene's misconduct because Defendant Keene committed a constitutional violation pursuant to Defendant County's "longstanding pattern . . . to not prioritize or take heed to the obvious and imminent threats or attempts of inmates to self-harm."  (ECF No. 16 at 23).  Plaintiff contends that Defendant County's municipal "custom of indifference" was the moving force behind Defendant Keene's conduct and Plaintiff's injuries.  *Id*.

1    "[A] local government may not be sued under § 1983 for an injury inflicted solely

2    by its employees or agents.  Instead, it is when execution of a government's policy or

3    custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said

4    to represent official policy, inflicts the injury that the government as an entity is responsible

5    under § 1983." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694

6    (1978).  "Local governing bodies, therefore, can be sued directly under § 1983 for

7    monetary, declaratory, or injunctive relief where . . . the action that is alleged to be

8    unconstitutional implements or executes a policy statement, ordinance, regulation, or

9    decision officially adopted and promulgated by that body's officers." *Id*. at 690 (footnote

10   omitted).  "The Supreme Court made clear that in addition to an official policy, a

11   municipality may be sued for 'constitutional deprivations visited pursuant to governmental

12   custom even though such custom has not received formal approval through the

13   [governmental] body's official decisionmaking channels.'" *Navarro v. Block*, 72 F.3d 712

14   (9th Cir. 1995) (alteration in original) (quoting *Monell*, 436 U.S. at 690-91), *as amended

15   on denial of reh'g* (Jan. 12, 1996).  "[F]our conditions [ ] must be satisfied in order to

16   establish municipal liability for failing to act to preserve constitutional rights: (1) that [the

17   plaintiff] possessed a constitutional right of which he was deprived; (2) that the

18   municipality had a policy; (3) that this policy amounts to deliberate indifference to the

19   plaintiff's constitutional right; and (4) that the policy is the moving force behind the

20   constitutional violation." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996)

21   (third alteration in original).

22          In this case, the Amended Complaint alleges that Defendant "[C]ounty continues to

23   be deliberately indifferent by permitting non-mental health providers (such as registered

24   nurses) to perform the 'gatekeeper' function."  (ECF No. 14 at 23).  The Amended

25   Complaint alleges that "RNs are not qualified or equipped to perform [] mental health and

26   suicide risk assessments" and that Defendant "[C]ounty does not provide RNs with

27   specialized training regarding suicide assessments." *Id*.  The Amended Complaint alleges

28   that Defendant "[C]ounty is liable for [Plaintiff]'s blindness and trauma because it was on

15

notice via a pre-existing – and highly publicized – pattern of similar constitutional violations due to [Defendant] [C]ounty's inadequate suicide and self-harm prevention policies and training programs." *Id*.  The Amended Complaint alleges that Defendant County's "inadequate policies and training were the moving force behind [Plaintiff's] preventable . . . injuries; and, therefore required modification." *Id*. at 24.

Taking all allegations as true and construed in the light most favorable to Plaintiff, Plaintiff alleges sufficient facts to demonstrate that Defendant County maintained a policy of permitting registered nurses to perform gatekeeper functions, mental health assessments, and suicide risk assessments without specialized training.  Plaintiff alleges sufficient facts to plausibly suggest that Defendant County's policies were inadequate to meet the constitutional obligation to administer adequate medical care to pretrial detainees and that Defendant County's inadequate policy was the moving force behind the constitutional violation.  *See Van Ort*, 92 F.3d at 835; *see e.g.*, *Estate of Miller v. Cty. of Sutter*, No. 2:20-cv-00577-KJM-DMC, 2020 WL 6392565, at \*14 (E.D. Cal. Oct. 30, 2020) (finding that defendants maintained a policy of inaction that amounted to deliberate indifference and finding a direct causal link between that policy and decedent's death because if defendants had trained staff to properly care for inmates with substance use disorders, then the nurses and counselors who saw decedent would likely have recognized a risk of suicide and would not have assigned her to an ordinary cell in the general population.).  The Court concludes that Plaintiff alleges facts to support a plausible claim for violation of the Fourteenth Amendment against Defendant County.

### iii.  State Law Causes of Action - Negligence Against All Defendants (claim 3) and IIED Against All Defendants (claim 4)

Defendants contend that both state law claims must be dismissed because Plaintiff failed to comply with California's pre-litigation tort claim requirements.[2]  Defendants

---

[2] Defendants Keene and County request the Court to take judicial notice of Exhibit A (ECF No. 15-2 at 4-5) to Defendants' Motion to Dismiss.  *See* ECF No. 15-2.  Exhibit A is a copy of Plaintiff's July 23,

contend that plaintiffs suing pursuant to state tort law must present pre-litigation claims to a public entity within six months of the alleged injury.  Defendants contend that Plaintiff's negligence claim is barred by Plaintiff's failure to allege the same, or substantially similar, supporting facts at the pre-litigation stage.  Defendants assert that the negligence claim Plaintiff presented to Defendant County on July 23, 2019 failed to identify Defendant Keene or any medical staff member, failed to allege that a medical evaluation occurred, and failed to allege inadequate medical attention.  Defendants assert that the negligence claim Plaintiff presented to Defendant County on July 23, 2019 only alleged that officers restrained Plaintiff, cut Plaintiff's fingernails, and placed Plaintiff in a holding cell alone and unrestrained.  Defendants contend that Plaintiff's IIED claim is barred by Plaintiff's failure to seek relief pursuant to a theory of IIED at the pre-litigation stage.

Plaintiff contends that her pre-litigation tort claim placed Defendant County on notice of the state law claims in this action.  Plaintiff contends that her pre-litigation tort claim reflects the facts alleged in the complaint and that both her pre-litigation tort claim and the complaint are predicated on the same facts.  Plaintiff contends that her pre-litigation tort claim adequately alleged that Plaintiff's blindness was caused by the failure of Defendant County's employees to provide Plaintiff with proper medical attention.  Plaintiff asserts that her pre-litigation tort claim alleged that Plaintiff was known to have mental problems, experienced a paranoid delusion while in custody, and was placed in a holding cell alone and unrestrained.

California Government Code § 945.4 states that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim [ ] has been presented to the public entity . . . ."  Cal. Gov't Code § 945.4.  "A claim shall be presented by the claimant . . . and shall show . . . ([1]) [t]he date, place and other circumstances of the occurrence or transaction which gave

---

2019 pre-litigation tort claim.  The Court takes judicial notice of Plaintiff's July 23, 2019 pre-litigation tort claim.

rise to the claim asserted[;] ([2]) [a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim[;] [and] ([3]) [t]he name or names of the public employee or employees causing the injury, damage, or loss, if known."  Cal. Gov't Code § 910.  "The purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation."  *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446 (2004). "Consequently, a claim need not contain the detail and specificity required of a pleading, but need only fairly describe what [the] entity is alleged to have done."  *Id*. (alteration in original).  "As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions, the claims statute should not be applied to snare the unwary where its purpose has been satisfied."  *Id*. (citations omitted).  "If the claim satisfies the purpose of the act without prejudice to the government, substantial compliance will be found."  *Elias v. San Bernardino Cty. Flood Control Dist.*, 68 Cal. App. 3d 70, 74 (Ct. App. 1977).  "The doctrine of substantial compliance requires no more than that the governmental entity be apprised of the claim, have an opportunity to investigate and settle it and incur no prejudice as a result of plaintiff's failure to strictly comply with the claims act."  *Id*. at 75.

In this case, Plaintiff's pre-litigation tort claim alleges that Plaintiff "began to suffer from a paranoid delusion" "[w]hile in custody . . . ."  (ECF No. 15-2 at 5).  Plaintiff's pre-litigation tort claim alleges the manner in which Plaintiff was held in custody, specifically that Plaintiff was "placed [ ] in a holding cell alone and unrestrained."  *Id*.  Plaintiff's pre-litigation tort claim alleges that Plaintiff engaged in enucleation while she was "left [ ] alone and unrestrained in a holding cell."  *Id*.  These allegations sufficiently describe the date, place, and circumstances giving rise to Plaintiff's state law claims for negligence and IIED and the injury incurred.  *See* Cal. Gov't Code § 910.  Applying a more exacting standard to Plaintiff's presentation of her pre-litigation tort claim would "eliminate meritorious actions" rather than "give the government entity notice sufficient for it to

investigate and evaluate the claim . . . ."  *Stockett*, 34 Cal. 4th at 446.  The Court concludes that dismissal of Plaintiff's state law claims for negligence and IIED against all Defendants on the grounds asserted is not warranted at this time.

## IV.   MOTION TO STRIKE

Defendants contend that the exhibits attached to the Amended Complaint and Plaintiff's references to the exhibits should be stricken as immaterial and impertinent pursuant to Federal Rule of Civil Procedure 12(f).  Defendants contend that the exhibits and references of reported suicides and inadequacies of Defendant County's suicide prevention protocols are immaterial and impertinent because Plaintiff fails to allege that she was suicidal while in custody, that she expressed suicidal ideations while in custody, or that her self-mutilation was part of a suicide attempt.  Plaintiff contends that the exhibits are material because they are used to satisfy the elements of a Fourteenth Amendment claim, specifically, Defendant County's well-settled municipal custom of inadequately responding to psychiatric issues and self-harm risks in jail.

Federal Rule of Civil Procedure Rule 12(f) states that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ."  *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (alteration in original).  The decision to grant or deny a motion to strike pursuant to Rule 12(f) is within the discretion of the court.  *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) ("We review a district court's decision to strike matter pursuant to Fed.R.Civ.P. 12(f) for an abuse of discretion.").  On a motion to strike, the court views the pleadings in the light most favorable to the non-moving party.  *See e.g.*, *San Diego Unified Port Dist. v. Monsanto Co.*, 309 F. Supp. 3d 854, 861 (S.D. Cal. 2018) (same); *Pallamary v. Elite Show Servs., Inc.*, No. 17cv2010-WQH-BGS, 2018 WL 3064933, at *8 (S.D. Cal. June 19, 2018) (same).

Generally, "motions to strike pleadings are disfavored . . . ." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 965 (9th Cir. 2014). Courts often require that the moving party make a showing of prejudice before granting a 12(f) motion to strike. *See Fogerty*, 984 F.2d at 1528 ("Moreover, in granting Fantasy's motion to strike, the district court correctly noted that the Zaentz/Argosy allegations created serious risks of prejudice to Fantasy, delay, and confusion of the issues."). Motions to strike should only be granted when it is clear that the allegations can have no possible bearing on the subject matter of the litigation. *See e.g.*, *Mann v. City of Chula Vista*, No. 18-cv-2525-WQH-MDD, 2020 WL 5759749, at *13 (S.D. Cal. Sept. 28, 2020) (same); *Monsanto*, 309 F. Supp. 3d at 861 (same); *Pallamary*, 2018 WL 3064933, at *8 (same); *Moser v. Health Ins. Innovations, Inc.*, No. 3:17-cv-1127-WQH-KSC, 2018 WL 325112, at *8 (S.D. Cal. Jan. 5, 2018) (same). If there is doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied in order to leave the assessment of the sufficiency of the allegations for adjudication on the merits after proper development of the factual nature of the claims through discovery. *See e.g.*, *Villarreal v. Cty. of Monterey*, 254 F. Supp. 3d 1168, 1180 (N.D. Cal. 2017) (same); *Guarantee Real Estate v. Hanover Ins. Co.*, No. 1:14–cv–00860–TLN–MJS, 2014 WL 5817536, at *2 (E.D. Cal. Nov. 7, 2014) (same).

Redundant allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action. *See e.g.*, *Mann*, 2020 WL 5759749, at *13 (same); *Moser*, 2018 WL 325112, at *8 (same). "Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fogerty*, 984 F.2d at 1527. "Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id*. Scandalous matter cast a cruelly derogatory light on a party or other person. *See e.g.*, *Mann*, 2020 WL 5759749, at *13 (same); *Moser*, 2018 WL 325112, at *8 (same).

The Court cannot conclude that the exhibits have no possible bearing on the subject matter of the litigation. *See e.g.*, *Mann*, 2020 WL 5759749, at *14 (same). Defendants have not met their burden to demonstrate that the Court should strike the exhibits at this

stage in the litigation.  *See e.g.*, *id.* (same).  Defendants' Motion to Strike (ECF No. 15) is DENIED.

## V.    CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendants Shannon Keene and County of San Diego (ECF No. 15) is DENIED.

IT IS FURTHER ORDERED that the Motion to Strike filed by Defendants Shannon Keene and County of San Diego (ECF No. 15) is DENIED.

Dated:  February 16, 2021

Hon. William Q. Hayes
United States District Court

3:20-cv-00456-WQH-BGS