Danielle R. Pena, Esq., SBN 286002
dpena@PHGLawGroup.com
PHG Law Group
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone: (619) 826-8060
Facsimile: (619) 826-8065

Attorneys for Tanya Suarez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYA SUAREZ, Individually,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, REGISTERED NURSE SHANNON KEENE, Individually, AND DOES 1-10, inclusive,<br><br>Defendants. | Case No. 20-cv-00456-WQH-DEB<br><br>**REPLY TO MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**<br><br>Date:      August 15, 2022<br>Judge:    Hon. William Q. Hayes<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# I.

# **INTRODUCTION**

Defendants misconstrue the basis of Plaintiff's proposed amendment. Defendants argue the amendment is based on Lt. Wilson directing Sgt. Jackson to remove content from Crist's report. Defendants contend the removal of content has no impact on Plaintiff's intentional infliction of emotional distress (herein "IIED") and supervisory liability claim because the content removal occurred after Ms. Suarez gouged out her eyes. Plaintiff agrees. While content removal was the reason the IA investigation was initiated, it is the new facts that were discovered during the investigation that warrants Plaintiff's motion to amend.

Specifically, Plaintiff's motion to amend is based on two new facts that were discovered during the IA investigation. Detective Blanco determined that Lt. Wilson, the Watch Commander, responded the first incident when Ms. Suarez tried to remove her eyes at the finger printing station and continued to supervise the incident up and until Ms. Suarez was placed in the safety cell. More to the point, Detective Blanco discovered that Lt. Wilson was present in the finger printing station when Ms. Suarez was secured to gurney and evaluated by the medical nurse and suicide gatekeeper. (Declaration of Danielle R. Pena ("Pena Decl.") ¶ 2.) Detective Blanco also discovered that Wilson was the supervisor on scene that was debriefed by Deputy Crist about Ms. Suarez's attempt to remove her eyes; and was <u>the</u> supervisor that <u>rejected</u> Crist's recommendation to place Ms. Suarez in a restraint chair to prevent additional attempts to self-harm. (Pena Decl. ¶ 2.) It is these two new facts that warrant the proposed amendment.

The additional information set forth in the proposed amendment regarding Lt. Wilson's failure to intervene, or direct her subordinates to intervene, when Ms. Suarez was actively removing her second eye in the safety cell, as reflected in paragraph 26 and 82 in the proposed amended complaint, was included in an abundance of caution. However, that allegation – that Lt. Wilson ratified her

2

subordinates conduct and that she personally failed to intervene before the second eye was removed – was alleged in the Second Amended Complaint ("SAC") [Dkt. 37] as reflected in paragraph 68.

Again, Plaintiff's proposed amendment is based on the new information that Lt. Wilson, knowing all the circumstances, was the supervisor that rejected Crist's suggestion to restrain Ms. Suarez prior to placing her in the safety cell. Had Lt. Wilson approved Crist's recommendation to restrain Ms. Suarez in the restraint chair, Ms. Suarez would not have had the means and opportunity to remove her eyes.

Accordingly, not only is the proposed amendment meritorious, but it is also timely as Plaintiff was more than diligent in discovering, requesting, and reviewing the IA Report, as well as meeting and conferring regarding the instant motion only two days after receiving the IA Report.

A.   *The Proposed Amendment is Not Futile*

As detailed in Plaintiff's Motion, the new fact learned from the IA report is that Lt. Wilson is <u>the</u> supervisor that rejected Deputy Crist's suggestion to use the restraint chair to prevent Ms. Suarez from further injuring herself.[1] With regards to IIED, Defendants contend, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Defendants' Opposition Filed Under Seal, 4:5-8.)

---

[1] Undisputedly, prior to production of the IA Report, Plaintiff's basis of information regarding the incident came from Deputy Crist's report, i.e.., the incident report. Therein, Deputy Crist states she recommended use of the restraint chair to the "*supervisors on scene,*" however the incident report did not specify what supervisor rejected Crist's recommendation. Though the IA investigation occurred because Lt. Wilson directed Sgt. Jackson to remove content from the incident report relating to the recommendation to use the restraint chair, it was revealed during the investigation that Lr. Wilson was the supervisor that rejected the recommendation to restrain Ms. Suarez.

1. Defendants misconstrue Plaintiff's proposed allegations. It is the not the act of
2. removing content from Crist's report that warrants the proposed amended, it is the
3. facts learned during the IA investigation that warrants the proposed amendment,
4. i.e., Lt. Wilson rejected the recommendation knowing full well that Plaintiff was in
5. a psychotic state and was screaming and thrashing around on the gurney when she
6. rejected use of the restraint chair. The act of ordering Sgt. Jackson to remove
7. reference to her rejection of Crist's recommendation is further proof that the
8. rejection occurred and that it was a thoughtless decision to make under the
9. circumstances. Those facts equate to reckless disregard.
10.     Similarly, with regard to supervisor liability, Defendants argue, ▇
11. ▇
12. ▇
13. ▇
14. ▇
15. ▇ (Defendants' Opposition Filed Under Seal, 4:20-24.) Again, Defendants
16. ignore the new facts that warrant Plaintiff's proposed amendment. That fact that as
17. a supervisor Lt. Wilson responded to the scene after deputies tackled Plaintiff to the
18. ground following her first attempt to remove her eyes at the finger printing station,
19. and observed Plaintiff for 10 minutes being treated by the suicide gatekeeper and
20. being debriefed by Deputy Crist, Lt. Wilson failed to direct her subordinates to act
21. reasonably, and failed to act reasonably herself in rejecting Crist's
22. recommendation. (See Proposed Amendment [Dkt. 51-1], Exhibit 2, ¶¶ 26, 82, 152-
23. 157.) These facts support Plaintiff's supervisor liability claim.
24.     B.    *The Proposed Amendment is Timely*
25.     Notably, Defendants did not oppose Plaintiff's contention that the
26. information learned from the IA Report was timely discovered and pursued.
27. Defendants know that Plaintiff asked for the IA Report immediately following
28. Castner's deposition and was diligent in seeking an amendment only two days after

the IA Report was produced. Based on this acknowledgment alone, Plaintiff's motion should be granted.

However, Defendants argue that Lt. Wilson's ratification of the deputies' unconstitutional conduct including cutting Plaintiff's nails and removing the handcuffs was information Plaintiff had over a year ago. Plaintiff agrees, which is why Plaintiff alleged those facts in the SAC. (See SAC ¶ 68.) Plaintiff is simply adding meat to the bone as facts have been discovered throughout the discovery process. Again, the motivation behind Plaintiff's proposed amended complaint is the new fact that Wilson responded to Ms. Suarez's first attempt and still rejected Crist's recommendation to restrain Ms. Suarez to prevent further attempts to self-harm knowing full well that Ms. Suarez was acting psychotic and thrashing around on the gurney.

### C. *The Proposed Amendment is Not in Bad Faith*

Defendants argue that Plaintiff's motion is in bad faith because Plaintiff allegedly sets forth three untrue facts. Defendants' contention is offensive and incorrect. First, Defendants argue that in her motion Plaintiff represented that Deputy Castner *said* the IA investigation related to "dishonesty of a deputy." Defendants take issue with this interpretation because Deputy Castner did not use the word "dishonesty." That is true. As stated in the motion, Deputy Castner testified that all she knew was that an IA investigation was initiated because someone removed content relating to the suggestion to use the restraint chair from Deputy Crist's report. (Motion [Dkt. 51-1], 6:3-10.) Plaintiff's interpretation of Deputy Castner's testimony is that a correctional staff member engaged in dishonest conduct (i.e., altering a deputy's incident report) relating to Ms. Suarez's incident. That is an appropriate interpretation of Deputy Castner's testimony. Defendants should not be permitted to police and control the way Plaintiff views, weighs, and frames evidence.

///

Similarly, Defendants also take issue with the following phrase Plaintiff used in her motion: "the IA investigation sustained charges against Sergeant Jackson for dishonest conduct…" Again, this is an appropriate interpretation of the IA findings because charges were sustained against Sgt. Jackson for altering a deputy's incident report, i.e., dishonest conduct. Plaintiff should be entitled to view the findings against Sgt. Jackson as one relating to dishonest conduct, and Plaintiff should be permitted to argue this fact to the jury. Defendants argue that there is a specific charge that can be found against a deputy for "dishonesty," and that such a finding requires the county to disclose reports relating to that incident. As indicated in Plaintiff's *Ex Parte* motion, Plaintiff was ignorant of this fact. However, because the altering a report relates to dishonest conduct, Plaintiff should be able to argue such a theory and Defendants can argue that the charge was downgraded to a lesser charge. [See, Dkts. 56, 56-1.] However, any assertion that a Rule 11 violation has occurred for summarizing Sgt. Jackson's (and Wilson's) conduct as "dishonest" is absurd.

Defendants' final contention that Plaintiff set forth untrue facts is moot as this Court ordered that the at-issue word be stricken from page 10:1 of Plaintiff's motion. [See Dkts. 57, 58.]

D.   <u>Plaintiff Has Been Diligent</u>

Defendants argue that the proposed amendment should be denied because this is Plaintiff's third amendment. This argument is disingenuous because the previous amendment, the second amendment, was necessary as Plaintiff had just received discovery and identified the individual defendants and their culpable conduct. This third amendment is equally necessary because Plaintiff just learned that Lt. Wilson and Sgt. Jackson were the supervisors that rejected Deputy Crist's recommendation to restrain Plaintiff.

/ / /

/ / /

## II.

## CONCLUSION

As detailed above, the proposed amendment is meritorious because it proves Lt. Wilson, the supervisor in command, responded to Plaintiff's initial attempt to remove her eyes and observed Plaintiff yelling and thrashing on the gurney. Lt. Wilson also observed Plaintiff be evaluated by the medical nurse and the suicide gatekeeper. She was then debriefed by Deputy Crist and explicitly told that Plaintiff tried to remove her eyes. Deputy Crist then recommended Plaintiff be placed in a restraint chair. Lt. Wilson rejected that recommendation.

According to the IA report, following the incident, Lt. Wilson directed a sergeant to remove any reference in the incident report to Crist's recommendation to use the restraint chair, as well as Wilson's rejection. When Deputy Crist noticed her report was changed, she elevated the issue with the jail captain. An IA investigation ensued. In response, Lt. Wilson lied about directing Sgt. Jackson to remove the content and lied about knowing Plaintiff tried to remove her eyes during the first attempt at the fingerprinting station. All of these facts equate to reckless disregard and support Plaintiff's claim for supervisor liability.

Plaintiff was diligent in discovering the existence of an IA investigation and in requesting and reviewing the IA Report. Just two days after receiving the IA Report, Plaintiff's counsel conferred with county counsel regarding a stipulation for a Third Amended Complaint. When it was determined that a complete stipulation was not feasible, Plaintiff's counsel filed the instant motion within 15 days. For the reasons set forth above, Plaintiff's motion should be granted.

Respectfully submitted,

**PHG Law Group**

Dated: August 8, 2022

by: ___s/ Danielle R. Pena___
Danielle R. Pena, Esq.
dpena@phglawgroup.com
Attorneys for Plaintiff Tanya Suarez-

COMPLAINT                                                                                CASE NO.